IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | |
| HOUSTON TRANSPORTATION SERVICES, LLC | § § § § | Case No. 19-30271 |
| Debtor. | § | Chapter 11 |

**DEBTOR'S EMERGENCY MOTION FOR ORDER:
(I) PURSUANT TO 11 U.S.C. §§ 361, 363, 364, AND 507,
BANKRUPTCY RULES 2002, 4001 AND 9014 AUTHORIZING THE DEBTOR
TO (A) OBTAIN UNSECURED POSTPETITION FINANCING, (B) USE
CASH COLLATERAL OF PREPETITION SECURED LENDER, AND (C) GRANT
ADEQUATE PROTECTION TO PREPETITION SECURED LENDER;
(II) SCHEDULING A FINAL HEARING; AND (III) GRANTING RELATED RELIEF**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER, IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELEIVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

Houston Transportation Services, LLC, the above captioned debtor and debtor in possession ("HTS" or the "Debtor"), hereby files this Emergency Motion for Order: (I) Pursuant to 11 U.S.C. §§ 361, 363, 364, and 507, Bankruptcy Rules 2002, 4001, and 9014 Authorizing the Debtor to (A) Obtain Postpetition Financing, (B) Use Cash Collateral of Prepetition Secured

Lender, and (C) Grant Adequate Protection to Prepetition Secured Lender; (II) Scheduling a Final Hearing, and (III) Granting Related Relief (the "Motion"), and in support hereof, respectfully states as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested in this Motion are 11 U.S.C. §§ 361, 363, 364 and 507, and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure, Rules 2002-1, 4001-1(b) and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas.

## II. BACKGROUND

3. On January 21, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").

### A. Company History

4. HTS was originally formed in 2005 as a limited partnership and converted to a limited liability company in 2010. HTS was founded for the purpose of purchasing City of Houston taxicab permits ("Taxicab Permits") to be operated by a fleet of independent contractor drivers. HTS leased property which contained offices and a maintenance facility where the company-owned vehicles and driver-owned vehicles could be maintained and repaired.

5. By 2011, the company owned and operated 404 Taxicab Permits, and was the second largest taxicab fleet in the city. The company used a state of the art computer dispatch system to track the vehicles in the fleet and assigned trips to the closest taxicab.

### B. Uber and Lyft Enter the Market:

6. In 2014, HTS was utilizing 100% of its Taxicab Permits. The following year, Uber and Lyft illegally entered the Houston market and offered their transportation services for a fraction of what HTS was required to charge pursuant to City of Houston ordinance. Eventually, the City legalized Uber and Lyft by adding a section to the city ordinance providing for Technology Network Companies ("TNCs"). In 2017 the State of Texas passed legislation by which only the State could regulate TNCs and cities could no longer do so.

7. Because TNCs are able to charge approximately 65% less than the meter rates HTS is required to charge, the Debtor has seen a dramatic loss in its business since 2015 and continues to lose customers. Despite the already immense difference in the amount charged by TNCs and the amount taxis are required to charge, the City of Houston has imposed a meter increase for taxis effective February 1, 2019. This will result in an even greater disparity of price between taxis and TNCs.

8. HTS has experienced a dramatic loss of its independent contractor drivers and for the past year has been utilizing less than 50% of its Taxicab Permits. As a result, the Debtor has been operating at a loss for several years. These losses have primarily been financed by advances made by the Debtor's members.

### C. Prepetition Litigation:

9. HTS has approximately eleven (11) cases pending in litigation which are the result of auto accidents, nine (9) of which occurred during 2015 and 2016. HTS was self-insured during this period of time. Two accidents occurred after 2016, at which time HTS had an auto liability insurance policy (said policy covers defense costs). In addition, HTS is a party to a lawsuit in which Texas Taxi, d/b/a Yellow Cab Company of Houston, is claiming damages for breach of

contract (HTS has counterclaims in this action for the damages it incurred as a result of breach of contract on the part of Texas Taxi). All of these cases are set for trial in 2019, some as soon as February.

10. Each of the self-insured pending lawsuits would cost the Debtor an estimated $15,000 to $25,000 in defense costs and the outcome of these cases are unknown.

### D. Prepetition Financing:

11. HTS has 3 secured loans with Independent Bank (the "Prepetition Secured Lender"). The loans are as follows:

1. Acquisition loan (No. 4448475010) - Balance is $536,102.07. All payments are current and the loan has not matured. This loan is secured by all of the assets of HTS.

2. Vehicle Line of Credit (No. 749257) - Balance is $194,374.00. All payments are current. This loan matured on December 31, 2018 (Lender accepted January 1, 2019 payment). The lender is not renewing the loan. This loan is secured by all of the assets of HTS, but specifically the vehicles purchased by HTS by using this line of credit (the bank has liens on all vehicles titles).

3. Operating Line of Credit (749338) - Balance is $808,000. All payments are current. This loan matured on December 31, 2018 (Lender accepted January 1, 2019 payment). The lender is not renewing the loan. This loan is secured by all of the assets of HTS.

### E. Goals Sought to be Achieved in Chapter 11

12. The Debtor does not see a reasonable chance of rehabilitation of its business given the current business climate. Given that the Debtor cannot operate at a profit, the Debtor has reduced its work force as well as the number of cabs on the road. The Debtor's goal is to liquidate the majority of the Prepetition Secured Lender's collateral and to attempt to realize some benefit for unsecured creditors. The Debtor believes that it should continue to operate the very limited business it has remaining and continue to market and sell its Taxicab Permits and vehicles during the chapter 11 case in order to pay down the Prepetition Secured Lender's debt.

### F. Necessity of DIP Financing and Use of Cash Collateral:

13. In order to continue limited operations, the Debtor will require the use of cash collateral of the Prepetition Secured Lender, as well as the injection of new cash. The Debtor's members have agreed to fund the needed new cash through a debtor-in-possession loan to the Debtor. The loan will be unsecured and carry a nominal interest rate.

14. The Debtor has requested the use of cash collateral from the Prepetition Secured Lender and believes that the bank will agree to the Debtor's limited use of its cash collateral under the conditions set forth herein.

### III. RELIEF REQUESTED

15. Pursuant to Bankruptcy Code §§ 361, 363, 364 and 507, and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure, Rules 2002-1, 4001-1(b) and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas, the Debtor requests the entry of an order substantially in form attached hereto (the "Interim Order"), providing, among other things:

    i. authorization for the Debtor to (A) obtain postpetition unsecured debtor-in-possession financing (the "DIP Loan") in an aggregate principal amount of up to $175,000.00 pursuant to the terms and conditions of the Interim Order and the Final Order;

    ii. authorization for the Debtor's use of Cash Collateral of the Prepetition Secured Lender as provided herein, and the provision of adequate protection to the Prepetition Secured Lender for any diminution in value of its interests in the prepetition collateral, including Cash Collateral;

    iii. the scheduling of an interim hearing (the "Interim Hearing") on an emergency basis, and a final hearing (the "Final Hearing") to consider entry of an Interim Order and Final Order authorizing the borrowings under the DIP Loan and the use of Cash Collateral.

### IV. SUMMARY OF KEY TERMS

16. The DIP Lender has proposed the following terms for the DIP Loan:

<u>Debtor/Borrower</u>:     Houston Transportation Services, LLC

- 5 -

| | |
|---|---|
| <u>DIP Lender</u>: | The Members of Houston Transportation Services, LLC (the **"DIP Lender"**). |
| <u>Amount</u>: | Up to $175,000.00. |
| <u>Annual Interest Rate</u>: | 2.49% |
| <u>Use of Proceeds</u>: | Pursuant to the Budget attached hereto as **Exhibit A**. |
| <u>Maturity Date</u> | July 31, 2019 |
| <u>Events of Default</u>: | The Events of Default (each, an **"Event of Default"**) include: |

        (1) Debtor defaults in the payment of this note;

        (2) the entry of an order in the Bankruptcy Case confirming a plan of reorganization other than one approved by the DIP Lenders;

        (3) the Bankruptcy Case is dismissed;

        (4) the conversion of the Bankruptcy Case to one under chapter 7 of the Bankruptcy Code.

| | |
|---|---|
| <u>Collateral/Priority</u>: | Unsecured with administrative priority. |

## V. ARGUMENT AND APPLICABLE AUTHORITY

**A.     The DIP Loan**

17.    Section 364(b) of the Bankruptcy Code provides:

> (b) The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.

11 U.S.C. 364(b).

18.    Bankruptcy Rule 4001(c) governs the procedures for obtaining authorization for postpetition financing and provides:

> (c)    Obtaining Credit
>
> (1)    <u>Motion; Service</u>.  A motion for authority to obtain credit shall be made in accordance with Rule 9014 and shall be served on any committee

> elected pursuant to § 705 or appointed pursuant to § 1102 of the Code or its authorized agent, or, if the case is a chapter 9 municipality case or a chapter 11 reorganization case and no committee of unsecured creditors has been appointed pursuant to § 1102, on the creditors included on the list filed pursuant to Rule 1007(d), and on such other entities as the court may direct. The motion shall be accompanied by a copy of the agreement.
>
> (2) <u>Hearing</u>. The court may commence a final hearing on a motion for authority to obtain credit no earlier than 15 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 15 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.
>
> (3) <u>Notice</u>. Notice of hearing pursuant to this subdivision shall be given to the parties on whom service of the motion is required by paragraph (1) of this subdivision and to such other entities as the court may direct.

FED. R. BANKR. P. 4001(c).

### i. The Debtor has Obtained an offer for Unsecured Financing.

19. The Debtor has been able to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code.

### ii. The DIP Loan is Necessary to Preserve Estate Assets

20. The Debtor has limited operations and requires additional funds to continue operating in chapter 11. The Debtor submits that entering into the DIP Loan constitutes an exercise of its sound business judgment that should be approved by the Court.

### iii. The Terms of the DIP Loan Are Fair and Reasonable.

21. The terms of the DIP Loan are extremely fair and reasonable. The DIP Loan is unsecured and the interest rate is nominal. The Debtor submits that it could never obtain a loan under equal or better terms if it had to go into the capital markets.

### B. Use of Cash Collateral

22. In order to continue operating even at a limited level, the Debtor requires the use of its cash. The Prepetition Secured Lender has a lien on the Debtor's cash. The Debtor believes that

the Prepetition Secured Lender will consent to the Debtor's use of cash collateral in accordance with the Budget.

23. Pursuant to 11 U.S.C. § 363(c)(3), the Court must condition a debtor's use of cash collateral as is necessary to provide adequate protection of the interest in the cash collateral claimed by a party. Here, the Debtor intends to provide adequate protection, to the extent of any diminution in value, to the Prepetition Secured Lender for the use of the Cash Collateral by providing the Prepetition Secured Lender post-petition replacement liens pursuant to 11 U.S.C. § 361(2) in all post-petition personal property, including cash generated or received by the Debtor subsequent to the Petition Date to the extent that the Prepetition Secured Lender had valid, perfected prepetition liens and security interests in such similar collateral as of the Petition Date.

## VI. NOTICE

24. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the Debtor's twenty (20) largest unsecured creditors; (iii) the Debtor's prepetition secured lender (iv) the Internal Revenue Service; and (v) all parties that have requested notice pursuant to Bankruptcy Rule 2002. Due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtor respectfully submits that no other or further notice is necessary.

## VII. BASIS FOR EMERGENCY RELIEF

25. An emergency exists because of the Debtor's need to continue use of cash collateral. The Debtor believes that there is a possibility it will need to use cash collateral right away, or at least within one or two days of filing this Motion. Moreover, as it is anticipated that the Prepetition Secured Lender's consent to use of cash collateral will be conditioned upon the granting of the protections set forth in the Interim Order, emergency consideration is warranted.

## VIII. **PRAYER**

WHEREFORE, the Debtor respectfully request that this Court authorize, on an interim basis, entry of the order submitted herewith authorizing the Debtor to (i) continue to use cash collateral; (ii) borrow the funds necessary for the interim period; (iii) grant the Prepetition Secured Lender the proposed replacement liens; (iv) set a final hearing as soon as this Court's schedule permits, following 14 days after service of this Motion for approval and entry of a final order; and (v) grant the Debtor such other and further relief as this Court may deem just and proper.

Respectfully submitted on the 21st day of January, 2019.

**OKIN ADAMS LLP**

By:    /s/ *Christopher Adams*
      Matthew S. Okin
      Texas Bar No. 00784695
      Email: mokin@okinadams.com
      Christopher Adams
      Texas Bar No. 24009857
      cadams@okinadams.com
      1113 Vine St., Suite 201
      Houston, Texas 77002
      Tel: 713.228.4100
      Fax: 888.865.2118

**PROPOSED ATTORNEYS FOR THE DEBTOR**

## **CERTIFICATE OF ACCURACY**

I certify that all of the statements set forth in this motion are true and correct to the best of my knowledge.

By:    /s/ *Christopher Adams*
      Christopher Adams